to our time clock, so when the yellow light comes on on the podium, you have two minutes left. When the red light comes on, we ask you to conclude your remarks unless you're answering a question from the court. We'd also advise that we have read the briefs and record excerpts. We may not have gotten into the entire record, and we appreciate record citations when those are appropriate. So with that, we call the first case of the morning, number 23-50167, Children's Health Defense v. FDA. We'll hear first from Mr. Barnes. May it please the Court, I'm Attorney Robert Barnes, representing Children's Health Defense. The question here is whether Children's Health Defense stated a case or controversy within the meaning of Article III of the U.S. Constitution. We contend they did. This is not a case where Children's Health Defense is seeking remedy for some third party. As Justice Scalia noted in Lujan at 504 U.S. 555, 561, and 562, if it's a, if you're bringing a claim on behalf of a third party, standing can be difficult. But if you're bringing it when you are the That was the case here. It's also important to note that as this Court recently reiterated in General Land Office 71 F. 4th, 264 at 269, 5th Circuit 2023, at the pleading stage, it's a different analysis than at the summary judgment stage or at the trial stage. This case was decided at the pleading stage, where general allegations suffice. These specific allegations are presumed within those general allegations. And what were those general allegations here? Note that for the purposes of the record, this can be found at ROA 1906 to 1974. Specific paragraphs of reference in the first admitted complaint include the introduction, paragraphs 7 22 27 95 96 1 49. Do these parents have a requirement to get their kids vaccinated? I'm sorry. Say that one more time. You're on. Do these parents have a requirement to get their kids vaccinated on COVID? Not at this time. You're on. So the and they're in three states. I mean, in Texas, it's pretty much disallowed to require anything about COVID. I know that much, and I don't think the other two states have that requirement. And if they did, wouldn't it be right? Like if a school was requiring it to sue that school, not the FDA, which does not require it? Yes, Your Honor. The risk of mandates was a particular risk identified in the complaint, but it wasn't the only risk identified in the complaint. We would note as to the risk of informed consent. The concern was that under Texas law, people other than the parent can, under certain circumstances, approve the vaccination of the child. Then why aren't you suing Texas or that part of you? Because the FDA is not requiring it. And in fact, we had a case that came back to us because it was mooted by the fact that nothing's being required anymore. So why would you sue the FDA? Because what you're saying is parents who want their kids to get vaccinated shouldn't be allowed to because they should throw out the COVID vaccine for the kids. That's what y'all are saying, right? No, Your Honor. What we want is to make sure that what Children's Health Defense is seeking is solely that the information given to parents is correct about what is scientifically proven to be safe and effective, medically necessary. For example, to this day, the emergency use authorization is the only basis by which Children under the ages of 12 are subject to the COVID vaccine. How is there still a public health emergency facing kids concerning COVID to this day when there isn't for anyone else? This goes to the FDA's emergency use authorization and the emergency powers. This case, I believe, goes far past the question of COVID or even COVID vaccines because this is a precedent setting case where the FDA is claiming that they can just say emergency use authorization and escape all judicial review. Their contention is that they are past and beyond legal review. They can even... That, of course, is a merits question or a cause of action question that we could reach, but we also need to know which of the plaintiffs have Article 3 standing. Absolutely, Your Honor. On what basis? Yes, Your Honor. So, first, there's organizational standing for Children's Health Defense because their entire organizational purpose is about protecting children's health, assuring informed consent, and accurate information concerning children's health. How long has this organization been in effect? Children's Health Defense has been around one form or another since 2007, Your Honor. Right, and before this FDA, you make some general allegations about... Obviously, you filed objections before the FDA? Yes, Your Honor. And you had some scientific studies put together or meta-analyses or something? That's correct, Your Honor. Yeah, well, what... So, you have to flesh out how the organization was injured... Allegedly injured by the FDA's emergency action? Absolutely, Your Honor. The... Here, typically, the FDA is their ally. Here, the FDA became their adversary. So, the question was, what were they going to do? Their first thing was to respond to the FDA, divert their resources to this issue. They don't usually do citizen petitions. That was entirely novel and entirely new. This isn't like a regular lobbying organization. So, they had to do all of the underlying research to support the citizen petition. They filed the citizen petition. Then, when it came to the emergency use authorization for children, the FDA wasn't allowing a separate children's petition or even any notice or comment to be allowed. So, they tried to submit correspondence to request that and they were denied. And then, when the FDA started using Big Bird and Elmo to promote this vaccine to children, that the evidence that Children's Health Defense had was not scientifically proven to be safe and effective yet, then the Children's Health Defense went to the public using social media. The Food and Drug Administration, the defendant in this case, went to those social media places and said, shut them down. Don't even allow them to use Facebook to interact with their own members to try to correct this misinformation. So, they had to divert almost all of their resources into rebutting the information that the FDA was putting out there that, according to the allegations of the complaint, which have to be assumed to be true at this stage, this was not a safe, effective drug. Okay. At the core of COVID, there was a lot going on all at once. Okay. Now, we are in the endemic or whatever. It's not a pandemic anymore, but it's kind of going to be with us forever. What is the FDA doing now that is of any relevance to you all, besides having the COVID vaccine available for kids? They're still promoting it. They're still marketing it. They're still suppressing information that's relevant to the parents being able to make an informed consent decision. They're still suppressing Children's Health Defense. Children's Health Defense still doesn't have access to certain social media networks that were important for reaching both its own members and the public. And this was all part of this agency action. And that's why, for example, they would have filed a motion to dismiss for mootness if they had finally changed this. But we're still here, and they're still calling it an emergency because it's so tempting to continue to use this power, that if they can do it now, they can do it in other contexts. And that goes to the broader concerns Children's Health Defense has about using this power. This power will continue to pose risk to the members of Children's Health Defense, and it's subject to any form of judicial review. And for example, this court in Fowler, oh yeah, another example, American Academy of Pediatrics, 379 F Supplement 3rd, 461, District Court of Maryland. What happened? The organization represented people who educate children about public health, just like Children's Health Defense. The FDA put out information that the American Academy of Pediatrics thought was false and inaccurate. They sued, and the federal court said, yes, you have standing because you're part of the group that's intended to be the intended beneficiary of this. Is that cited in your brief? Yes, Your Honor. The one case that's not, that's a recent case, is Port Arthur Community Action case, the docket for the Fifth Circuit is 22-60556, that was just decided I think a month and a half ago, that noted whenever an organization has to change its conduct to respond to agency action, then it has standing to sue. It has suffered a constitutionally cognizable injury. This is also a district court case that we do cite in our briefs, Cutler that talks about this, that says that just the increased risk to being exposed to an unsafe or ineffective drug is, quote, constitutes a distinct and consumer. That's the target of this authorization is the plaintiffs in this case. So this is not a case of seeking third-party issues. These are the plaintiffs were the direct target. They took remedial action where they could. Well, the plaintiffs aren't going to subject their children to the vaccine, so really they're not injured until and unless it becomes a mandate. There, I think the question is whether the risk itself is an injury. Putting aside the organizational standing, children's health defense has already experienced substantial cost and massive diversion of resources in responding to this, but putting aside the organizational issue on the associational standing or the individual standing, courts have previously recognized that merely the risk is the injury. Well, those are cases that involve things like bad vitamins or supplements or food accidentally. Yes. Not necessarily, but usually. That's one way to do it. But this is a vaccine and you know that you're going to take it or not take it. But your risk of being exposed to discrimination, your risk of the parental child relationship being invaded in the informed consent component as the federal district court noted in Booth, there the child had not yet. That doesn't appear because the FDA is the one acting in the course without the FDA. None of this is that issue. Like let's say we look without the FDA, kids couldn't get a covid vaccine and who knows how many of them might have died without it. You're assuming that it's bad for kids, but the FDA did what it needed to do to put it out there in the middle of an unknown, all out of the blue pandemic. The all we're asking is for the opportunity to in fact prove they didn't follow the science. If we're wrong, if they're right, the district court can so rule and the vaccine stays available. We're only saying that that whether or not they went through the scientific process. You're trying to take the vaccine away. You said earlier you're not, but you are. If in fact it's unsafe and ineffective for kids, absolutely. We would be, but that that and we intend to prove that. If we're wrong, however, then the court can so say. The key here is there's not even a judicial review occurring. The FDA is beyond all review. That's what they're asserting. That's an extraordinary power. There is a statute that talks about emergency powers, but again, let's, we need to go back to standing because I do not understand. Well, on organizational standing, we have two or three cases that are cited frequently in the briefs like NAACP v. City of Kyle and this El Paso case and some others that you have to, that say courts must be very careful about allowing organizations to assert standing. Otherwise you can manufacture an organization which can immediately manufacture standing and create, put us in the position of an advisory opinion. Yes, Your Honor, and we're not seeking that at all. Well, when you say, I mean, so what struck me in what you said earlier was that FDA used to be the ally of your group and that this was the first time the group had done a citizen petition. I had assumed children's health defense had always been involved in that kind of activism. It's been involved in activism in terms of educating the public and making sure its members know. But in that capacity, the expectation is the FDA is their ally in that process, not their adversary, that the FDA is not the source of the misinformation. Someone else is the source of the misinformation. Maybe a drug company, maybe a medical care provider, maybe someone else, maybe an environmental company. A lot of children's health defense originated with environmental toxin concerns for exposed, for children. So in this context, this was new, having to not only rebut So you're saying anybody who disagrees with the FDA has standing? No, Your Honor, only if you're within the protected intended beneficiaries. What the federal court noted in Cutler was that the intended beneficiaries are the drug consumers. So if you're one of the drug consumers, so for example, let's say I sued over the abortion pill. The abortion pill doesn't concern me. But if I was someone for whom the abortion pill was needed, then I would be one of the intended beneficiaries who would have the right to sue if it was taken away from me or made. And like I said, the parents here are not required to get their kids vaccinated. And I respect that deeply. So I'm not trying to say you have to or you don't have to. I'm just saying they don't. There is no requirement. And so that is something I respect their rights. But parents who want to get them vaccinated, you know, you seem to not respect that right. I know what we want is for the scientific process to go through and for there to be the and if it wasn't, if the law wasn't followed, if emergency power was abused, if this wasn't scientifically proven, we don't want to wait until 15 years from now. And we have a different epidemic on our hands, like what happened with the 1978 swine flu vaccine, where two years later, we figured out, oh, the FDA rushed it, they shouldn't have rushed it. Now we have more injuries from the vaccine than we did from the disease. We don't want to wait, for example, could somebody sue after they suffer death or disability? Could they suffer? Not really. It's no longer redressable. Right now, this is redressable. It's about the information that's creating the risk, the authorization that's creating the risk, the mislabeling and misbranding that's creating the risk. And that is, in fact, what the FDA fundamentally is. And I apologize, I'm out of time. Thank you. So you have rebuttal. Thank you. All right. Next, we have Mr. Janda. Thank you, Your Honor, and may it please the court. Sean Janda for the FDA. I think it might be helpful to start this morning by just taking a step back to sort of be clear and reinforce what is actually being challenged here, what the agency action is and what it does. And the plans here are challenging issuance of the EUAs for the two vaccines for children. The issuance of the EUAs does not regulate anybody in the sense that it doesn't require anybody to do anything. It doesn't prohibit anybody from doing anything. It just ensures that the companies are able to market the vaccines so that parents and pediatricians can decide together. What about the CHD who says y'all have screwed it up and they want to show that? So to the extent they think that we've screwed up the science, I don't think that's an injury to them. And so on the organizational standing piece, you know, I think the starting principle sort of repeatedly articulated in this court's cases, and this is true for organizations and individuals, is that an agency or defendant doing something out in the world that you disagree with or that you don't like or that you oppose is not enough to give you standing. And that's true even if you choose to dedicate time or other resources to trying to combat that thing that you don't like. So I think the line that this court's cases draw is between agency actions, like I said, that sort of operate or defense actions that operate out in the world, and actions that really in some significant way impair or regulate the party trying to challenge them. So, you know, I think Haven's Realty actually is a good example, particularly in juxtaposition with the Louisiana Fair Housing Center case that we cited in the 20HA letter, because both involved nonprofits that deal with housing discrimination, trying to sue alleged providers of discrimination. And Haven's Realty, the Supreme Court helped the organization had standing. And the theory there was that the organization engaged in counseling of individuals to try and help them find housing. And the defendants had sort of directly impaired their ability to do that by providing them false information about what units were available in their apartments. And so without appropriate information about what units were available, the organization couldn't properly counsel its clients. Conversely, in Louisiana Fair Housing Center case, the defendant was alleged to have been engaged in racial discrimination, which is something that the housing center obviously opposed and spent significant resources trying to educate, investigate, combat out in the world. But nothing about the housing center, the defendants' alleged discrimination sort of directly impaired the housing center's ability to do the things it does, to advocate, to educate, to... What about this argument that you're keeping them off of Facebook? So I just don't think that has anything to do with the challenge actions in this case. I mean, I said the challenge actions... So you're not denying it? I have no idea what is happening with Facebook, Your Honor. That's certainly not in the complaint. My understanding is that they have a different case pending in the Western District of Louisiana where they are suing about what they say is the government sort of trying to keep them off social media or interfering in their ability to operate on social media. But I don't think that has anything to do with... So this is not the social media case. This is, should we have this vaccine or not for kids? Right, right. Should it be available for parents and pediatricians to decide whether children should have it? And so I think that's this case, the social media stuff, I mean... Does the FDA have any mandating of kids getting vaccine? To the best of my knowledge, neither the FDA nor anybody else in the federal government mandates that children get vaccines. There's certainly no allegation in this complaint. I even think the government mandate on general, you know, on people that work for them and stuff has also been being pulled back. That is broadly true, Your Honor. I'm not... I know we had one that, we had an en banc that got sent back to us as well. That is correct. I don't want to say that sort of every place where the federal government has required them has been pulled back, but it's certainly moving in that direction. And there's certainly, as I said, no allegation in the complaint. And I think certainly sort of the opposite, the sort of disavowal of any such mandate at the podium today, as best I can tell. He's saying y'all haven't made it... It's not safe for kids, and that's what he's challenging. That is sort of the merits of their claim. That's right, Your Honor, that the FDA is scientifically... Then why... He's saying they have standing for that. Right. And again, I just... Again, no one is making... With respect to the individual plants, no one is making the individual plants children take the vaccine, as best I can tell. Which is different from some vaccines are required. Excuse me, sir, but an emergency use authorization implies that there's a basis for emergency use, and FDA has not discouraged. And I'm pretty sure I've read in the press the various organizations that FDA itself has said, it's not a bad idea, and there's no other reason to have Big Bird and Elmo talk about getting their shots than to encourage it. So... Certainly, FDA's issuance of the EUA reflects FDA's determination that the vaccine meets the standard, and it reflects its scientific review. But I think, again, the important point is that FDA is not requiring that anyone get the vaccine. FDA has issued the authorization, which helps ensure that... I mean, you know, whether there's a cause of action is a completely separate question, but insofar as this group is saying that the... Colorfully, that the FDA turned from ally into opponent, and that they have never... That in trying to get out information to their have been hindered by the FDA's emergency approval, that they never had to file a citizen petition before, that they had to do all sorts of contortions novel to their organization, doesn't that seem to fall into the category of unusual activity, oppositional activity that yields standing? No, Your Honor. And let me put the citizen petition to one side for a minute, but I'll get back to that, because I think there are some additional problems with relying on that to generate standing. But I think at an overall level, the problem here, again, is that nothing in the EUA requires the organization to do anything, or it regulates them in any way, to the extent that they disagree with the EUA, that they choose to spend resources trying to educate the public or advocate about... What they said they were trying to do was prevent the EUA, but also prevent FDA from providing inaccurate information about things such as adverse impact on children and cost benefits. In other words, statistically, hardly any kids under the age of 12 actually died from COVID. But you put that again, the way FDA makes decisions is to balance that against how many adverse effects can you have from the vaccine, and there are statistical adverse effects. But again, Your Honor, I think the fact that FDA has done something that the organization disagrees with is not a basis for standing. I mean, that's sort of... Well, the emergency use authorization prevents them from trying to promulgate that there is government support for reticence about using the vaccine. Again, Your Honor, I don't understand what the sort of significant impairment of their actual activities is. The fact that they sort of disagree with the decision, the fact that they choose to use resources to educate, to advocate, to do the things that they do, it's just not a basis for that point. The best cases you have for that proposition? I think the Louisiana Fair Housing Center case is sort of directly on point. I mean, there, again, the defendant was engaged in alleged racial discrimination in the world, which is a thing that the nonprofit plaintiff fought against. That was their mission, and they had sort of almost exactly the same sorts of allegations that they had spent resources investigating the defendant, that they spent resources sort of working to educate the public, to advocate. And what this court said is that that is their choice to make. And trying to spend resources to educate and advocate and investigate racial discrimination is the thing the nonprofit does. I mean, having to spend resources or choosing to spend resources educating and advocating the public is the thing that Children's Health Defense does. That is the core of their organizational mission, as best I understand it. And the fact that they are choosing to advocate about this vaccine is their choice to make, but it's not a thing that gives them any sort of standing. And then just sort of two other quick points on that, sort of beyond the broader, I think, sort of threshold hurdle, is number one, I mean, I think the allegations in this complaint are particularly threadbare in terms of things that they have diverted resources away from, or sort of projects that they haven't been able to pursue. And I would encourage the court to look at the relevant paragraphs of the complaint. There's not a lot there. And certainly, under this court's cases, including City of Kyle and the Louisiana Fair Housing case, I think much more would be required, even if that sort of self-inflicted injury or that choice to spend resources on this rather than other things could give rise to standing. And then on the citizen petition piece of things, I mean, I think the problem there is sort of twofold. Number one, as this court's case has made clear, including, again, City of Kyle and the Louisiana Fair Housing case, resources spent sort of investigating the defendant or in preparation for litigation can't give rise to standing. I mean, obviously, just like an individual can't sort of bootstrap their way to standing by spending resources preparing to challenge an action, an organization can't do the same thing. And so to the extent the citizen petition is sort of filed in preparation for this sort of litigation, that just can't give rise to standing. And then second, I think to the extent that they have spent resources in the past on a citizen petition, that's just not a redressable injury at this point moving forward. Those previous resources, money damages, aren't available in the suit. And so revoking the EUA doesn't in any way redress whatever resources they have spent on sort of filing the citizen petition. And then, I mean, to the extent that the court has any questions about the individual plan of standing as well, I'll be happy to address those. But I think fundamentally, again, the point is just FDA's EUA doesn't require them or anyone else to do anything. Is there any allegation from the individuals that they are forced to give COVID vaccine to their kids? No, Your Honor. At the podium today, I understand what's being said. There's no allegation. And it is, in fact, not true that any of the individual plaintiffs' children are subject to the vaccine. And then, I mean, just very briefly, to the extent the court thinks standing is difficult or gets past standing, I think the one other piece of this is that agency actions here are sort of expressly, textually committed to agency discretion by law. That's an explicit provision in the EUA statute. And so in this court, that preclusion of a pay suit for actions committed to agency discretion by law is a jurisdictional preclusion of review. And this court certainly could, I think, affirm on that very easy basis, even if the court gets past standing or doesn't want to address standing or finds it more difficult. There are no other questions? Yes, we have no other questions. Thank you. All right. Thank you. Okay, Mr. Bynes. Thank you, Your Honor. First, on the Louisiana case, that's a tester case. This is not a tester case. There were no members, and there they were suing on behalf of a third party. This is not suing on behalf of a third party. Of note, in that case, the court— Well, your entity is not going to be getting vaccinated, so it is really third parties. The organizational standing is still present, Your Honor, because what the Children's Health Defense is about is about accurate information to parents and children, including the members, but the broader public, so they can make informed— Was this case about the Facebook or the other case that he— This case, paragraph 162, Your Honor, I believe it's an ROA-1946, if I recall the correct ROA citation, Your Honor. We actually cited it in this case. But was that your claim, or is it in this other case, the claim? There's also a separate claim here, but yes, it was part of this claim, Your Honor, because it was all about accurate information, the ability to get accurate information to parents concerning their children's— The restricting you on Facebook, was that something that you claimed in this case? Is it issue in this case? Yes, Your Honor. And why do you have the other case? The other case goes to multiple other agencies and other actors, Your Honor. This concerns the FDA. In that case, it concerns other actors within the Biden administration. The— And as to resolution, the resolution being sought was labeling, accurate labeling. For example, what could happen here is that the vaccine is made completely available to all just accurate labeling. It doesn't say, this is absolutely safe, this is absolutely effective, this has— doesn't fail to identify a single side effect. It doesn't say there's a— You know, all of those statements are statements that could be retracted, and much of the injury that FDA— that CHD has experienced, and the risks the parents are experiencing, would be redressed and removed. There, the vaccine would still be available to children, but with correct labeling. Uh, as to relevant cases, Your Honor, I would note that the Louisiana case they cite contrasts that to OCA Greater Houston, 867F3-604, or the Acorn case, Fowler, 178F3-358. In both of those, or in the Port Arthur Community Action case, recently decided, in all of those, when you're forced to divert your resources, and in like one of those cases concerning a voting rights group, in none of those cases did the statute directly say, we are going to punish you, group A. But in each case, they did something that forced them to divert their resources to do what was in their court mission. I was— I was struck, uh, by the third-party standing, organizational standing, argument that this court recently accepted in a case called Vote.org v. past year, and that was a group that had, uh, developed a, a, uh, a basis for voter registration by a, uh, cell phone app, and, uh, that was held to be inconsistent with Texas law. But in the course of deciding the case, the court held that Vote.org had organizational standing, because they had used resources to develop this app, which they had to, you know, put to an entirely different, I mean, which came to naught, the same as your request to, arguably, the FDA to change its methodology and, and, uh, disclosure requirements, uh, also came to naught. Yes, Your Honor, that's correct. Well, part— the parties might take note of that, and they might, uh, furnish little 28J supplemental letters or, uh, statements about the applicability of that, uh, decision. Yes, Your Honor. Uh, lastly, I'll finish on wise words from this court in wages in White Lion versus the same defendant, FDA, 41F4, 427 at 442, recent decision, uh, Fifth Circuit 2022, that one of the key roles of the court in these, in this context is to, quote, ensure the agency turns square corners in dealing with the public to whom it is subservient. That is what this case is about. If the, if these plaintiffs don't have standing, nobody does, then the FDA is above the law. Thank you, Your Honor. All right. Thank you.